UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

05-60204-CR-HUCK  MAGISTRATE JUDGE
          SIMONTON
18 U.S.C. §371
18 U.S.C. §1343

UNITED STATES OF AMERICA,

v.

ADAM R. KIDAN and
JACK A. ABRAMOFF,

          Defendants.
_____

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment:

1. SunCruz Casino, Ltd. was a Florida general partnership which, through its general partner, CasinoCruz Inc., and its affiliated entities, Dream Boat USA Inc.; DreamCruz, Inc.; Mr. Lucky's Excursions, Inc.; Paradise of Port Richey, Inc.; DreamCruz II, Inc.; Tropic Casino Cruises, Inc.; and 3514 Ocean Drive, Inc. (hereinafter collectively referred to as "SunCruz"), owned and/or operated vessels which were utilized to transport passengers from ports and other locations within the United States into waters outside United States territorial limits where gambling activity occurred.

2. Foothill Capital Corporation (hereinafter "Foothill") was



a California corporation which was in the business of providing commercial financing to persons and entities within the United States and elsewhere.

3.  Citadel Equity Fund, Ltd. was a Cayman Islands company which ultimately acquired, and therefore is the successor in interest to, Nelson Partners Ltd., a Bermuda company which was in the business of providing commercial financing to persons and entities within the United States and elsewhere.  As used herein, "Citadel" refers to Citadel Equity Fund, Ltd., Nelson Partners Ltd., and any other affiliate which provided and/or assumed funding for the purchase of SunCruz.

4.  Konstantinos "Gus" Boulis was the founder of SunCruz and controlled the affairs of SunCruz from in or about 1994 through September 27, 2000.

5.  In or about 1998, the United States of America initiated a lawsuit against Konstantinos "Gus" Boulis and others in Southern District of Florida Case No. 98-1851-CIV-SEITZ, asserting that Boulis was ineligible to own or exert control over SunCruz based, in part, upon Boulis' lack of United States citizenship.  In 1999, Boulis began negotiating a settlement of that lawsuit.

6.  Beginning in or about January 2000, Konstantinos "Gus" Boulis and others within his employ began negotiating with the defendants for the sale of SunCruz.

7.  In February 2000, Boulis entered into a divestiture

agreement with the United States of America, which agreement required that Boulis divest himself of his ownership interest in SunCruz within 36 months. By its terms, said agreement was to remain confidential so as not to adversely effect the ultimate purchase price any prospective buyer(s) would pay for SunCruz.

8. LEAK, Inc. was a Delaware corporation. SunCruz Casinos L.L.C. was a Florida limited liability company. JAB America, Inc. was a Florida corporation. All of these entities were formed by or on behalf of the defendants for the purpose of acquiring SunCruz from Konstantinos "Gus" Boulis.

9. In or about June 2000, the defendants sought to obtain financing for the SunCruz purchase from Foothill. Foothill invited Citadel into the transaction as a participating lender to provide a portion of the financing sought by the defendants.

10. As a condition for providing financing, Foothill and Citadel required that the defendants make a cash equity contribution toward the purchase of SunCruz in the approximate amount of $23 million.

11. As a condition for providing financing, Foothill and Citadel required that the defendants be personal guarantors on the loans and that they submit accurate personal financial statements setting forth their respective assets and liabilities.

12. On or about September 21, 2000, an Asset Purchase Agreement was executed for the sale of SunCruz to SunCruz Casinos

L.L.C. and JAB America, Inc. for a purchase price of $147.5 million. Said Asset Purchase Agreement provides, in pertinent part, that "[a]t the Closing, Buyer shall pay to Seller the amount of Buyer's financing plus Buyer's equity contribution in the sum of Twenty Three Million Dollars ($23,000,000), reduced by Buyer's closing and acquisition costs, by means of a cashier's check or wire transfer ..."

13. On or about September 21, 2000, a Loan and Security Agreement was executed in favor of Foothill and Citadel which provides, in pertinent part, that the "agent shall have received evidence satisfactory to it that Adam Kidan and Jack Abramoff have made an equity contribution to [SunCruz] in cash in an amount no less than $23,000,000 on terms and pursuant to documentation satisfactory to the Lender Group."

14. On or about September 27, 2000, Foothill and Citadel released more than $60 million in financing in accordance with the September 21, 2000 Loan and Security Agreement.

### COUNT 1

### Conspiracy to Commit Wire Fraud & Mail Fraud

15. The General Allegations set forth above in paragraphs numbered one (1) through fourteen (14) of this Indictment are re-alleged and expressly incorporated by reference as though fully set forth herein.

16. Beginning in or about January 2000, the exact date being

unknown to the Grand Jury, and continuing to and including in or about June 2001, in the Southern District of Florida, and elsewhere, the defendants,

ADAM R. KIDAN<br>
and<br>
JACK A. ABRAMOFF,

knowingly and willfully combined, conspired, confederated and agreed with one another, and with Konstantinos "Gus" Boulis, and with other persons known and unknown to the Grand Jury, to commit offenses against the United States, that is, to devise and intend to devise a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses, representations and promises and, in so doing, (a) to knowingly cause to be transmitted by means of wire communications in interstate and foreign commerce, certain signs, signals, and sounds, in violation of Title 18, United States Code, Section 1343 (Wire Fraud) and (b) to knowingly cause to be delivered by commercial interstate carrier according to the directions thereon, certain matters and things, in violation of Title 18, United States Code, Section 1341 (Mail Fraud).

<b><u>OBJECT OF THE CONSPIRACY</u></b>

17. It was the object of the conspiracy that the defendants and their co-conspirators, having devised and intending to devise a scheme and artifice to defraud, would obtain financing from Foothill and Citadel for the purchase of SunCruz by submitting and causing to be submitted false information and false documentation to Foothill

5

and Citadel in order to induce Foothill and Citadel into making loans toward the purchase in the approximate amount of $60 million.

## MANNER AND MEANS OF THE CONSPIRACY

18.    The manner and means by which the defendants and their co-conspirators sought to accomplish the object of the conspiracy included, among others, the following:

A.    It was part of the scheme and artifice to defraud that the defendants would seek funding from various lenders and investors in connection with their purchase of SunCruz. To that end, the defendants would solicit, or cause to be solicited, loans from individuals, which they would refer to as "flash funds," to use for the express purpose of leading potential lenders to believe that the defendants had the necessary funding to complete the sale of SunCruz when, in truth and in fact, they did not.

B.    It was further part of the scheme and artifice to defraud that the defendants would submit to Foothill and Citadel false information, including personal financial statements, which overstated their respective net worth.

C.    It was further part of the scheme and artifice to defraud that the defendants would make false statements to agents and employees of Foothill and Citadel concerning the defendants' prior employment and experience in order to falsely present themselves as more credit-worthy borrowers in the purchase of SunCruz than they in fact were.

D.  It was further part of the scheme and artifice to defraud that the defendants would represent to agents and employees of Foothill and Citadel that they had funds available in excess of $20 million dollars for the purchase of SunCruz when, in truth and in fact, they did not.

E.  It was further part of the scheme and artifice to defraud that the defendants and their co-conspirators would represent to agents and employees of Foothill and Citadel that a $23 million cash equity contribution had been made by the defendants toward the purchase of SunCruz when, in truth and in fact, it had not.

F.  It was further part of the scheme and artifice to defraud that the defendants would create and execute, and cause to be created and executed, documents in which it was certified that they had made a cash equity contribution toward the SunCruz purchase in an aggregate amount of not less than $23 million when, in truth and in fact, they had not.

G.  It was further part of the scheme and artifice to defraud that the defendants would execute, and cause to be executed, promissory notes in the approximate amount of $20 million in favor of Konstantinos Boulis as a substitute for the cash equity contribution which they otherwise asserted had been made toward the purchase of SunCruz, and would conceal that fact from Foothill and Citadel.

H.  It was further part of the scheme and artifice to defraud that the defendants and their co-conspirators would take all

necessary steps to conceal from the agents and employees of Foothill and Citadel the fraudulent nature of the SunCruz purchase in order to induce Foothill and Citadel to extend the financing for the purchase and to avoid detection of such fraud by the agents and employees of Foothill and Citadel and by law enforcement authorities.

**OVERT ACTS**

19.     In furtherance of the conspiracy and to achieve the object thereof, at least one of the co-conspirators committed and caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

A.     On or about June 20, 2000, JACK A. ABRAMOFF caused to be sent, by facsimile transmission from Washington, D.C. to Dania Beach, Florida, a document purporting to be an accurate personal financial statement, which document contained false information concerning his assets.

B.     On or about July 25, 2000, ADAM R. KIDAN caused to be sent, by facsimile transmission from Dania Beach, Florida to Santa Monica, California, a document purporting to be an accurate personal financial statement, which document contained false information concerning his assets.

C.     On or about August 8, 2000, the defendants met with representatives of Foothill and Citadel in New York, New York during which JACK A. ABRAMOFF falsely claimed to be a partner in the law firm of Preston, Gates, Ellis & Rouvelas Meeds, LLP and ADAM R.

KIDAN falsely claimed to have previously worked in the casino industry.

D. On or about September 22, 2000, the defendants each executed a document titled "Equity Contribution" in which they certify that "they have made a cash equity contribution to Suncruz Casinos L.L.C. ... in an aggregate amount of not less than $23,000,000."

E. On or about September 22, 2000, ADAM R. KIDAN, on behalf of the buyers, executed and caused to be delivered to employees of Konstantinos "Gus" Boulis two promissory notes totaling $20 million.

F. On or about September 22, 2000, the defendants caused to be sent, by facsimile transmission from Washington, D.C. to New York, New York, closing documents bearing the signature of JACK A. ABRAMOFF and pertaining to the acquisition of SunCruz.

G. On or about September 22, 2000, the defendants caused to be sent, by commercial interstate carrier from Washington, D.C. to New York, New York, a package containing closing documents bearing the signature of JACK A. ABRAMOFF and pertaining to the acquisition of SunCruz.

H. On or about September 26, 2000, ADAM R. KIDAN, on behalf of the buyers, executed a closing statement which states, in pertinent part, "CASH FROM BUYERS in the amount of $23,000,000 which has been received by the Sellers," which document was sent by facsimile transmission from Dania Beach, Florida to New York, New York.

I. On or about September 27, 2000, the defendants caused to be

9

sent to Foothill, by facsimile transmission from Dania Beach, Florida to Boston, Massachusetts, a counterfeit document purporting to be a funds transfer notification reflecting that, on September 22, 2000, $23 million had been wire transferred from the account of LEAK, Inc. at Chevy Chase Savings Bank to the account of Konstantinos Boulis at Ocean Bank in Miami, Florida.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2- 6

### Wire Fraud

20.  The General Allegations set forth above in paragraphs numbered one (1) through fourteen (14), and those allegations set forth in Paragraphs 18(A) through 18(H) of Count 1 of this Indictment, are re-alleged and incorporated by reference as though fully set forth herein.

21.  On or about the approximate dates enumerated as to each count, at Broward County, in the Southern District of Florida, and elsewhere, the defendants,

> ADAM R. KIDAN
> and
> JACK A. ABRAMOFF,

having devised a scheme and artifice to defraud and for obtaining money and property by false and fraudulent pretenses, representations and promises, and attempting to do so, for the purpose of executing such scheme and artifice and attempting to do so, did knowingly transmit and cause to be transmitted in interstate commerce by means of wire communications, certain signals and

sounds, as more particularly described below:

| **COUNT** | **DATE** | **WIRE COMMUNICATION** |
| --- | --- | --- |
| 2 | September 21, 2000 | Unexecuted promissory notes in the amounts of $5,000,000.00 and $15,000,000.00 respectively sent by facsimile transmission from Dania Beach, Florida to New York, New York. |
| 3 | September 22, 2000 | Closing documents bearing the signature of Jack A. Abramoff sent by facsimile transmission from Washington, D.C. to New York, New York. |
| 4 | September 26, 2000 | Closing statement bearing the signature of Adam R. Kidan sent by facsimile transmission from Dania Beach, Florida to New York, New York. |
| 5 | September 27, 2000 | Document titled "Funds Transfer Notification" reflecting that $23,000,000.00 had been transferred from the account of Leak, Inc. to the account of Konstantinos Boulis sent by facsimile transmission from Dania Beach, Florida to Boston, Massachusetts. |
| 6 | September 27, 2000 | Wire transfer of funds in the amount of $25,776,790.52 from the bank account of Foothill Capital Corporation in New York, New York to the bank account of Konstantinos Gus Boulis in Miami, Florida. |

In violation of Title 18, United States Code, Sections 1343 and 2.

**CRIMINAL FORFEITURE**

22. The General Allegations portion of this Indictment, and the allegations set forth in Counts 1 through 6, are re-alleged and incorporated herein by reference.

23. As a result of the violations of Title 18, United States Code, Sections 371 and 1343 set forth in this Indictment, the defendants,

> ADAM R. KIDAN
> and
> JACK A. ABRAMOFF,

shall forfeit to the United States of America any property, real and personal, which constitutes or is derived from proceeds traceable to the violations set forth in Counts 1 through 6 of this Indictment, all pursuant to the provisions of Title 28, United States Code, Section 2461 and Title 18, United States Code, Section 981(a)(1)(C).

24. Such forfeitures shall include, but are not limited to, the sum of approximately $60,000,000.00, which represents property constituting, or derived from, proceeds traceable to or derived from conspiracy to commit mail and wire fraud, and wire fraud, as set forth in Counts 1 through 6 of this Indictment.

25. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred, or sold to, or deposited with a third party;

    (c) has been placed beyond the jurisdiction of the Court;

      (d)    has been substantially diminished in value; or

      (e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek the forfeiture of any other property of defendants up to the value of the above-described forfeitable property, pursuant to Title 18, United States Code, Section 982(b) and Title 21, United States Code, Section 853(p).

A TRUE BILL

_____
FOREPERSON

_____
R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

_____
LAWRENCE D. LaVECCHIO
ASSISTANT UNITED STATES ATTORNEY

_____
PAUL F. SCHWARTZ
ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**PENALTY SHEET**

Defendant's Name:  ADAM R. KIDAN

Count #: 1          18 U.S.C. 371          Conspiracy to Commit Mail and Wire Fraud

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine

Counts #: 2 - 6     18 U.S.C. 1343         Wire Fraud

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PENALTY SHEET**

Defendant's Name:  JACK A. ABRAMOFF

Count #: 1          18 U.S.C. 371          Conspiracy to Commit Mail and Wire Fraud

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine

Counts #: 2 - 6     18 U.S.C. 1343         Wire Fraud

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

REV. 12/12/96

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

05-60204

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. |
| vs. | |
| ADAM R. KIDAN, et al. | **CERTIFICATE OF TRIAL ATTORNEY** CR - HUCK |
| Defendants. | MAGISTRATE JUDGE |
| | Superseding Case Information: SIMONTON |

**Court Division**: (Select One)

\_\_\_ Miami  \_\_\_ Key West
_X_ FTL  \_\_\_ WPB  \_\_\_ FTP

New Defendant(s)  Yes \_\_\_  No \_\_\_
Number of New Defendants  \_\_\_
Total number of counts  \_\_\_

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)  _No_
   List language and/or dialect  _____

4. This case will take  _10_  days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)            (Check only one)

   I    0 to 5 days    \_\_\_           Petty      \_\_\_
   II   6 to 10 days   _X_            Minor      \_\_\_
   III  11 to 20 days  \_\_\_           Misdem.    \_\_\_
   IV   21 to 60 days  \_\_\_           Felony     _X_
   V    61 days and over \_\_\_

6. Has this case been previously filed in this District Court? (Yes or No) _No_
   If yes:
   Judge: _____  Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No) _No_
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____ District of _____

   Is this a potential death penalty case? (Yes or No) _No_

7. Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 2003? _X_ Yes  \_\_\_ No

8. Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999?  \_\_\_ Yes  _X_ No
   If yes, was it pending in the Central Region?  \_\_\_ Yes  \_\_\_ No

9. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?  \_\_\_ Yes  _X_ No

10. Does this case originate from a matter pending in the Narcotics Section (Miami) prior to May 18, 2003?  \_\_\_ Yes  _X_ No

_____       _____
Lawrence D. LaVecchio           Paul F. Schwartz
Assistant U.S. Attorney         Assistant U.S. Attorney
Florida Bar No. 0305405         Court I.D. A5500086

*Penalty Sheet(s) attached

REV 1/14/04